# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

|  |  |
|---|---|
| WILLIAM J. PAATALO, | Cause No. CV 10-119-BLG-CSO |
| Plaintiff, |  |
| vs. |  |
|  | ORDER |
| J.P. MORGAN CHASE BANK, N.A.; BANK OF AMERICA, N.A.; MACKOFF KELLOGG LAW FIRM; LPS FIELD SERVICES, INC.; and LENDER PROCESSING SERVICES, INC., |  |
| Defendants. |  |

Pending before the Court are the following motions:

(1) Plaintiff William Paatalo's (hereafter "Paatalo")  Motion for Partial Summary Judgment (*Court Doc. 137*);

(2) Chase's Motion for Summary Judgment (*Court Doc. 186*); and

(3) Paatalo's Motion to Re-Open Discovery (*Court Doc. 212*).

The remaining defendant, Bank of American N.A. ("BANA"), joins Chase's Motion for Summary Judgment in its entirety.  *Court Doc. 193.* Having reviewed these motions and authorities presented thereon, the Court rules as follows.

## I.    **BACKGROUND**

The following facts are taken primarily from the documents presented with Chase's motion for summary judgment.  Other than as set forth below, Paatalo does not challenge the authenticity of these documents.  As noted below, he did not file a Statement of Genuine Issues, as required by the Local Rules.  The Court includes here only those facts relevant to resolving the pending motions.

On January 30, 2007, Paatalo purchased residential property in Nye, Montana.  He owned two other homes at the time.  *Court Doc. 188-1 at 80-81.*  He had worked in the mortgage industry about seven years, doing a large percentage of his work with Washington Mutual.  *Id. at 34, 42, 52.*

To finance his purchase, he borrowed $294,000 from Washington Mutual Bank FA, executing an Adjustable Rate Note ("Note") (*Court Doc. 188-5)* and a Deed of Trust (*Court Doc. 188-6*).  Although Paatalo has refused to testify that he signed the documents, he has not denied that he did so.  *Court Doc. 188-1 at 140* (testifying that the signatures "could be" his).  He has acknowledged that he did sign an adjustable

2

rate note and a deed of trust on January 31, 2007, and that he then borrowed $294,400 from Washington Mutual Bank, FA.  He attached an unexecuted copy of the Deed of Trust as Exhibit 4 to his Complaint and affirmatively alleged in his Complaint that he is the owner in the Deed of Trust. *Court Doc. 2 at 5, ¶ 20 and Exh. 4.*  He acknowledges that the signatures on the executed documents appear to be his, as do the initials. *Court Doc. 188-1 at 141-43.*

In the Note, Paatalo promises to repay the principal sum in monthly payments, with interest. *Court Doc. 188-5 at 1.*  He acknowledges in the Note that the Lender may transfer it and that a transferee would thereafter be the "Note Holder." *Id.*  In the event of Paatalo's default, the Note gives the Note Holder the right to accelerate the principal balance due and to collect late charges, fees and expenses in enforcing the Note. *Id. at 4.*  The Note reflects a blank indorsement signed by Cynthia Riley, a Vice President of Washington Mutual Bank FA. *Id. at 6.*

The Deed of Trust is identified as a "Trust Indenture Under the Small Tract Financing Act of Montana." *Court Doc. 188-6 at 1.*  It

identifies the lender as Washington Mutual Bank, FA, and Stillwater

Abstract & Title as the Trustee.  *Id. at 1-2.*  The Deed of Trust gave

notice to Paatalo that the Lender could sell its interest in the Note:

> The Note or a partial interest in the Note (together with this
> Security Instrument) can be sold one or more times without prior
> notice to Borrower.  A sale might result in a change in the entity
> (known as the "Loan Servicer") that collects Periodic Payments
> due under the Note and this Security Instrument and performs
> other mortgage loan servicing obligations under the Note, this
> Security Instrument, and Applicable Law.

*Id. at 12.*  The Deed of Trust also allows the Lender to remove the

trustee and to appoint a successor trustee, who "shall succeed to all the

title, power and duties conferred upon Trustee herein and by Applicable

Law."  *Id. at 13-14.*

Washington Mutual sold Paatalo's mortgage loan to WAMU Asset

Acceptance Corporation on May 27, 2007, pursuant to a Mortgage Loan

Purchase and Sale Agreement and Term Sheet between said

companies.  *Court Docs. 190 at 2 (Barbara Campbell Aff.), 188-8*

*(Mortgage Loan Purchase and Sale Agreement), and 188-9 (Term Sheet).*

WaMu then deposited the mortgage loan into the WaMu Mortgage

Pass-Through Certificates Series 2007-OA3 Trust ("Trust"), pursuant to

a Pooling & Servicing Agreement. *Court Docs. 188-10, 188-11 at 22*.

According to these documents, the 207-OA3 Trust then owned Paatalo's

Note.  LaSalle Bank National Association was the initial Trustee of the

Trust (*Court Doc. 188-10 at 2*) and in October 2009 Bank of America

became Trustee of the Trust.  *Court Doc. 188-12*.

On September 25, 2008, the United States Office of Thrift

Supervision seized Washington Mutual Bank and placed it into an

FDIC receivership.  *Court Doc. 188-14*.  Chase then purchased the

assets of the failed Washington Mutual Bank from the FDIC.  *Court

Doc. 188-15 at 13*.  Chase specifically did not assume any liabilities of

Washington Mutual.  *Id*.  Chase took possession of Washington

Mutual's mortgage files, including Paatalo's original Note and Deed of

Trust.  *Court Doc. 191 at 2*.

Paatalo missed several mortgage payments in late 2008 and early

2009.  *Court Doc. 188-1 at 153-54*.  He again stopped making payments

in September 2009.  *Id*.  On January 21, 2010, Chase filed an

Assignment of Trust Indenture (from Chase to LaSalle Bank),

Substitution of Trustee (LaSalle Bank substituting Charles Peterson as

5

Successor Trustee in Paatalo's Deed of Trust), and Notice of Trustee's Sale on June 1, 2010.  *Court Docs. 188-17, 188-18, 188-20.*  On April 21, 2010, Charles Peterson, as Successor Trustee, cancelled the sale.  *See Court Doc. 188-1 at 171-72; Court Doc. 2, Exh. 12.*

Paatalo has made no payments since October 2011.  *Court Doc. 201 at 3, ¶ 11.*  As of February 7, 2012, Paatalo's unpaid principal balance on the loan was $307,422.59.

Additional facts as pertinent to each count are recited below.

## II.   DISCUSSION

### A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
Material facts are those which may affect the outcome of the case.
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as
to a material fact is genuine if there is sufficient evidence for a
reasonable fact-finder to return a verdict for the nonmoving party.   *Id*.

Entry of summary judgment is appropriate "against a party who
fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear
the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  "A moving
party without the ultimate burden of persuasion at trial – usually, but
not always, a defendant – has both the initial burden of production and
the ultimate burden of persuasion on a motion for summary judgment."
*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,
1102 (9th Cir. 2000).  "In order to carry its burden of production, the
moving party must either produce evidence negating an essential
element of the nonmoving party's claim or defense or show that the
nonmoving party does not have enough evidence of an essential
element to carry its ultimate burden of persuasion at trial." *Id*.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. Again, the opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## B.   CHASE'S MOTION FOR SUMMARY JUDGMENT

### (1)   Initial Findings

The Court has repeatedly reminded Paatalo that pro se litigants are bound by the Local Rules. *See, e.g., Court Docs. 34 at 42, 45; 76 at 5, 199 at 1.* As Chase notes in its Reply Brief, Paatalo's response opposing Chase's motion for summary judgment violates several Local Rules. *Court Doc. 206 at 5-6.* Most importantly, Paatalo failed to follow Local Rule 56.1(b), which requires that a party opposing a motion for summary judgment must file a Statement of Genuine Issues, and that the Statement must:

> (1) set forth in serial form each fact on which the party relies to oppose the motion;
> (2) cite a specific pleading, deposition, answer to interrogatory, admission or affidavit before the Court to support each fact; and
> (3) be filed separately from the ... brief.

The law is clear that by failing to file a Statement of Genuine Issues, Paatalo is deemed "not to raise a triable issue of material fact as to the claims on which the moving party seeks summary judgment."

*Peterson v. Time Ins. Co.,* 2012 WL 1755166 (D. Mont. 2012) (*citing*

*Deirmenjian v. Deutsche Bank, A.G.,* 2010 WL 3034060 at *7 (C.D. Cal.

July 30, 2010)).  Summary judgment may properly be entered for Chase

and BANA on this basis alone.  *Id.*

The motion is also properly granted if the Court considers the

arguments presented by Paatalo in his brief opposing Chase's motion.

*Court Doc. 220.*  Paatalo's brief fails to meaningfully address the

arguments and authorities that Chase presents in its Motion (*Court*

*Doc. 186),* Supporting Brief (*Court Doc. 187*), and Statement of

Undisputed Facts (*Court Doc. 192*).   Paatalo presents several frivolous

arguments that clearly lack any merit, such as (1) Paatalo's contention

that the Defendants lack standing where the Defendants have asserted

no claims, and (2) his contention that the Deed of Trust is

unenforceable because "there is no case and controversy so the court

lacks jurisdiction over the subject matter."  *Court Doc. 200 at 20, 22.*

Paatalo also presents many other arguments for which he cites no

authority.  The Court is not required to do Paatalo's legal research for

him or comb the record on his behalf for factual support for his claims,

and it would not be proper for the Court to do so.  *See Western Radio Services Co. v. Qwest Corp.,* 678 F.3d 970 (9th Cir. 2012).  "Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."  *United States v. Graf,* 610 F.3d 1148, 1166 (9th Cir. 2010).  Paatalo's arguments that are not supported by citation to legal authority or to the record are rejected.

Arguments that Paatalo presents addressing issues arguably pertinent to Chase's motion are discussed below.

### (2)   Chase's Right to Foreclose on the Note/Deed

The fundamental premise of most of Paatalo's claims is his contention that Defendants had no legal right to initiate a non-judicial foreclosure.  Paatalo contends that Chase is not a holder in due course of the Note and was not otherwise entitled to initiate non-judicial foreclosure proceedings under the Note and Deed of Trust.  *See Court Doc. 2 at 5-6.*

In its summary judgment brief, Chase contends, *inter alia,* that it is the holder of the Note and is entitled to enforce it pursuant to the Uniform Commercial Code, MCA § 30-3-204.  This statute provides that

if an indorsement is made to an identified person, it is a "special indorsement."  But if an indorsement is not a special indorsement, it is a "blank indorsement."  MCA § 30-3-204(2). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id.*

Chase contends that because it is in possession of Paatalo's Note, which contains a blank indorsement, it is a "holder" within the UCC's definition (*see* MCA § 30-1-201(2)(v)(i)) and may enforce it. *See* MCA § 30-3-301 (a holder of an instrument is a "person entitled to enforce" it). Chase cites numerous recent decisions holding that, despite securitization of a note, a holder of a note is entitled to enforce it. *See, e.g., Horvath v. Bank of New York, N.A.,* 641 F.3d 617, 621 (4th Cir. 2011) (holding, under Virginia law, that whoever possesses a note endorsed in blank has full power to enforce it and the deed of trust executed contemporaneously with it); *Edwards v. Ocwen Loan Servicing, LLC*, 2012 WL 844396 at * 5 (E.D. Tex. 2012); *Corales v. Flagstar Bank, FSB,* 822 F.Supp. 2d 1102, 1107-08 (W.D.Wa. 2011).

Paatalo's response does not discuss these authorities cited by

13

Chase. *See Court Doc. 200 at 10-12.*  Instead, he contends that Chase

has the burden of establishing the validity of his signature and that

they have not done so.  *Court Doc. 200 at 10.*   Although he mistakenly

cites the UCC 3-308, the Court presumes that Paatalo is relying on

MCA § 30-3-307, which provides in pertinent part:

> In an action with respect to an instrument, the authenticity of
> and authority to make each signature on the instrument is
> admitted unless specifically denied in the pleadings.  If the
> validity of a signature is denied in the pleadings, the burden of
> establishing validity is on the person claiming validity, but the
> signature is presumed to be authentic and authorized unless the
> action is to enforce the liability of the purported signer and the
> signer is dead or incompetent at the time of trial of the issue of
> validity of the signature.

Paatalo's reliance on this statute does not raise a genuine issue of

material fact that precludes summary judgment.  He does not state in

which "pleading" he "specifically denied" the validity of his signature.

In his only pleading in this action, his Complaint (*see Fed.R.Civ.P.

7(a)),* he does not specifically deny signing the Note and Deed of Trust.

His Complaint instead alleges that he did enter into a loan agreement

with Washington Mutual Bank, N.A., on January 30, 2007, and that he

"relied upon the due diligence of the apparent 'Lender' (i.e., actually the

14

Loan Seller) in executing and accepting the closing documents." *Court Doc. 2 at 5 ¶ 15, and at 9 ¶ 32.*  His somewhat conflicting allegation, made only on information and belief, that the Note was not executed by him "or if it was executed, has long since been lost or intentionally destroyed, or paid in full, or assigned to a third party...." (*Court Doc. 2 at 5, ¶ 18)* is not a specific denial.  The Official Comment to this UCC section states that "[i]n the absence of such specific denial the signature stands admitted , and is not in issue."

Although Paatalo raises questions about how his signature appears on the Note and Deed of Trust (*see, e.g., Court Doc. 200 at 5, 19-20)*, these questions were not raised in a timely manner, as this Court noted in a prior Order.  *Court Doc. 203 at 6.*   Furthermore, he has not stated how the allegedly altered documents differ in content from the documents he signed and thus does not raise genuine issues of material fact on this issue.

In addition, Paatalo's allegation that the deed of trust is fatally defective because the notarial seal lacks an execution date also fails.  It is true that MCA § 1-5-609 requires that a notarial act be evidenced by,

inter alia, the date on which the act was performed.  But the Court

concludes that the lack of the date on the notarial seal here does not

render the deed of trust invalid for several reasons.  First, Paatalo did

not raise this claim in a timely manner.  Second, he has cited no

authority supporting his position that absence of the date of the

notarial act renders the notarized document invalid.  Third, as noted

above, Paatalo already has acknowledged that did sign a deed of trust

on January 31, 2007, when he borrowed $294,400 from Washington

Mutual Bank, FA.   As discussed above, he affirmatively alleged in his

Complaint that he is the owner in the Deed of Trust.  *Court Doc. 2 at 5,*

*¶ 20 and Exh. 4.*  He acknowledges that the signature on the deed of

trust appears to be his, as do the initials.  *Court Doc. 188-1 at 141-43.*

And fourth, the deed of trust bears the notation on its first page that it

was recorded in Stillwater County, Montana, on January 31, 2007.

Because Paatalo acknowledges that he signed a deed of trust on

January 31, 2007, and because it was recorded that same day, it can be

ascertained that the notarial act also occurred on that day.  For all

these reasons, there is no basis to conclude that the deed of trust is

invalid merely because the notary public did not indicate the date of the notarial act.  Although there appears to be no Montana authority on this question, other courts addressing the issue are in accord.  *See, e.g., Lasalle Bank N.A. v. Zapata*, 2009-Ohio-3200, 921 N.E.2d 1072 (Ohio Ct. App. 6th Dist. Ottawa County 2009) (mortgage was valid and enforceable by mortgagee's assignee, even if it had been defectively executed by being signed by mortgagor outside the presence of a notary, absent any allegation that it had been obtained by fraud); *Valeriano-Cruz v. Neth*, 14 Neb. App. 855, 716 N.W.2d 765 (2006) (failure of notary public to endorse his commission's expiration date on arresting officer's sworn report containing the recitations required by implied consent statute did not invalidate the report); *Levitt v. 1317 Wilkins Corp.*, 58 NYS2d 507 (1945, Sup) (the fact that an acknowledgment bore the date of January 14, 1926, whereas the deed was dated January 14, 1927, and was recorded January 15, 1927, was held in, in effect, not to render the acknowledgment ineffective, the owner whose chain of title included such deed being held entitled to specific performance on the part of a purchaser of the property); *Spero*

*v. Bove*, 116 Vt 70, 70 A2d 562 (1950) (the operative effect of a deed was held not to be defeated because the acknowledgment was undated); *Hasley v. Bunte*, 176 Okla. 457, 56 P.2d 119 (1936) (held that instrument was not vitiated even though neither deed nor acknowledgment of it was dated); *Barouh v. Israel*, 46 Wash.2d 327, 281 P.2d 238 (1955) (supporting rule that omission of date in acknowledgment is not a fatal defect).

To the extent that Paatalo argues that the security interest is unenforceable because of securitization of the Note, or because of split ownership of the Note and Deed of Trust, these arguments have recently been rejected by this Court in *Heffner v. Bank of America,* 2012 WL 1636815 (D.Mont. 2012), and the same reasoning is adopted here.

To the extent that Paatalo challenges the validity of the various assignments, purchase agreements, and pooling or servicing agreements, this Court concludes, as many courts have previously held, that a borrower does not have standing to challenge assignments and agreements to which it is not a party.  *See, e.g., Edwards v. Ocwen Loan Servicing, LLC, supra; Bank of New York Mellon v. Sakala*, 2012

WL 1424665 (D. Haw. 2012) (holding that the borrower lacked standing to raise a violation of a pooling and servicing agreement). Furthermore, the Montana Supreme Court long ago rejected arguments that a note holder needed to establish title to the note and mortgage by written assignments, holding:

> The note for which the mortgage was given as security ... shows an indorsement in blank. This was sufficient evidence of title to establish prima facie ownership. It is generally held that possession of a negotiable note payable to order and indorsed is prima facie evidence of ownership ... and the same rule applies to nonnegotiable notes. ....

*Ingebrightsen v. Hatcher*, 288 P. 1023, 1024 (1930) (*citations omitted*). The state continues to recognize the transferability of notes indorsed in blank by adopting the UCC provisions cited above.

Accordingly, the Court concludes that there is no genuine issue of material fact with respect to Chase's authority to enforce the Note and Deed of Trust at issue. With these conclusions as a foundation, the Court turns to the specific claims in Paatalo's complaint.

### (3)   Count I: Violation of the Real Estate Settlement Procedures Act

In Count I, Paatalo alleges that Chase violated the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2607, by accepting charges for rendering of real estate services "which were in fact charges for services other than those actually performed" and for "willful non-compliance by intentionally ignoring Plaintiff's 'Qualified Written Requests' and not responding within the 20-day, and 60-day statutory requirements." *Court Doc. 2 at 25.*

Chase argues (1) that it cannot be held liable for any RESPA violations occurring before it took over as servicer of the loan on September 25, 2008, (2) that it cannot be held liable for any RESPA violation because Chase is the holder of Paatalo's Note with authority to enforce it, and (3) that it cannot be held liable for failure to respond to Paatalo's "qualified written request" (QWR) under RESPA, because Paatalo has not identified any damages he suffered as a result of the violation (*citing Court Doc. 188-23 at 14-15).*  Chase admits that it did in fact fail to respond to Paatalo's QWR dated July 22, 2010.

Paatalo's response brief did not address Chase's arguments on his RESPA claim.  Courts have held that a plaintiff must prove actual damages to recover on a RESPA claim.  *See, e.g., Zander v. ACE Mortg.*

*Funding LLC,* 2012 WL 601896 (C.D. Cal. 2012)*; Hensley v. Bank of New York Mellon*, 2011 WL 4084253 at *4 (E.D. Cal. 2011).  In addition, a single failure to respond to a QWR does not constitute a "pattern or practice" for purposes of RESPA.  *Laporta v. Bank of America,* 2012 WL 938716 at *2.

In response to Chase's motion, Paatalo did not raise a genuine issue of material fact as to his alleged damages.  Accordingly, the Court will grant summary judgment to Chase on Count I.

### (4) <u>Count II:  Fraudulent Misrepresentation</u>

Count II alleges fraudulent misrepresentation claims arising from conduct that occurred before and at the loan closing on January 30, 2007.  *Court Doc. 2 at 26.*  Chase argues that it did not make any such misrepresentations and that it is not liable for any representations made by Washington Mutual.  Chase did not become involved with this loan until it purchased the assets of Washington Mutual more than one year later, without assumption of Washington Mutual's liabilities.  Paatalo presents no contrary evidence to raise an issue of fact.  For this reason, the Court concludes that Chase is entitled to summary

judgment on Count II.

### (5) <u>Count III: Breach of Fiduciary Duty</u>

Count III also is based on conduct occurring before or at the loan closing.  Paatalo alleges that defendants breached fiduciaries duties to him by fraudulently inducing him to enter into the mortgage transaction.  *Court Doc. 2 at 26.*  As noted above, Chase was not a party to the loan transaction until 2008.

Additionally, a bank does not owe a fiduciary duty unless special circumstances exist where the bank acts as an advisor or asserts influence in a customer's business.  *First Security Bank v. Abel,* 184 P.3d 318, 323-24 (Mont. 2008).   There is no allegation or contention here regarding such a special relationship.

For the above reasons, Chase is entitled to summary judgment on Count III.

### (6) <u>Count IV: Unjust Enrichment</u>

Paatalo's unjust enrichment claim is based on fees he paid to obtain credit and in settlement of the loan.  *See Court Doc. 2 at 27.* Again, Chase was not at that time involved with this loan.

Additionally, the Court has concluded above that Chase, as a holder of the Note, does have the authority to enforce it.  Accordingly, any contention that Chase is unjustly enriched by virtue of enforcing its rights as a holder, must fail.  Chase is entitled to summary judgment on Count IV.

## (7) Counts V, VI: Civil Conspiracy, Civil RICO

Chase argues that, to the extent that Paatalo's claims are based on his allegation that Chase did not have legitimate authority to enforce his Note, they fail.  *Court Doc. 187 at 25.*  Chase also argues: (1) that Paatalo has no related damages and that there is no genuine dispute that he has not suffered concrete damage as a result of the alleged conspiracy or RICO, (2) that Paatalo cannot prove any unlawful or predicate acts; (3) that Paatalo cannot prove that Chase engaged in a pattern of racketeering activity; and (4) that foreclosing on a home does not support a RICO violation.

Paatalo's response brief does not mention his RICO claim.  Other courts have held that activities leading up to and including a foreclosure are "nothing more than conduct undertaken in the ordinary

course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO." *Zander, 2012 WL 601896 at \*3 (citing Book v. Mortg. Elec. Registration Sys.,* 608 F.Supp.2d 277, 282 (D.Conn. 2009)) *and Dost v. Northwest Trustee Servs., Inc.,* 2011 WL 6794028 at \* 12 (D. Or. 2011).

With regard to his civil conspiracy claim, Paatalo only states that defendants should not be permitted to collect payments from him or enforce his loan documents because of their "egregious violations in contravention of the [Pooling & Servicing Agreement] and [Mortgage Loan Purchase Agreement]." *Court Doc. 200 at 26.* Because the Court has previously concluded that Chase may enforce the Note, and that Paatalo has no standing to challenge agreements to which he is not a party, this contention fails.

For these reasons, the Court concludes that Chase is entitled to summary judgment on Counts V and VI.

## (8) <u>Counts VIII, XII: Quiet Title, Slander of Title</u>

In Count VIII, Paatalo alleges that he is the owner and/or entitled to possession of the subject property and that Defendants have no legal

or equitable right, claim or interest in said property.  He seeks a

declaration from the Court that the title to the subject property is

vested in him alone.  *Court Doc. 2 at 29-30.*  But Paatalo has not shown

that the debt has been satisfied or that it is unenforceable as a matter

of law, as he must to be entitled to a quiet title decree.  *See Montana*

*Valley Land Co. v. Bestul,* 253 P.2d 325, 328 (Mont. 1953).  Given the

Court's findings above with respect to Chase's authority to enforce the

Note, summary judgment on this Court must be granted to Chase .

Similarly, Count XII alleges that defendants falsely disparaged

Paatalo's title to the property.  *Court Doc. 2 at 32.*  Based on the above

findings, this claim against Chase also fails.

### (9) Count IX: Violation of MUTPA

The MUTPA prohibits "[u]nfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or

commerce[.]" § 30-14-103, MCA.  The Montana Supreme Court has

defined an unfair act or practice as "one which offends established

public policy and which is either immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers."  *Rohrer v.*

*Knudson*, 203 P.3d 759, 764 (Mont. 2009).  The Montana Legislature enacted these provisions "to protect the public from unfair or deceptive practices."  *Tripp v. Jeld-Wen, Inc.*, 112 P.3d 1018, 1026 (Mont. 2005); *see also* MCA § 30-14-201.

Paatalo's Count IX does not explain what Chase allegedly did that violated the MUTPA.  *Court Doc. 2 at 30.*  Chase contends that it is entitled to summary judgment on Count IX because it had authority to cause foreclosure proceedings to be commenced when Paatalo defaulted on his Note.  Chase further contends that the MUTPA claim against it fails because Paatalo has no ascertainable damage from the non-judicial foreclosure or other action by Chase.  *Court Doc. 187 at 34-35.*

Paatalo's response fails to raise a genuine issue of material fact on Count IX.  Accordingly, summary judgment on this claim must issue.

### (10) <u>Count XI: Violation of the FDCPA</u>

Chase contends that Count XI also fails because Chase has established that it has the right to enforce the Note and Deed of Trust. Paatalo's only response is an otherwise unexplained statement that

26

this claim has been "colored." *Court Doc. 200 at 26.*   Again, Paatalo

fails to point to any issues of fact that preclude summary judgment to

Chase as a matter of law.

### (11) **Count XIII:  Trespassing**

In Count XIII, Paatalo claims that the defendants, including

Chase, illegally trespassed on his property on or about March 4, 2010,

and that he suffered damages as a result. *Court Doc. 2 at 32-33.*

Chase does not dispute that its agents entered the subject

property on March 4, 2010.  But Chase contends that it is entitled to

summary judgment on this claim because the Deed of Trust authorized

Chase to enter the property "if it suspects it has been abandoned."

*Court Doc. 187 at 37.*  Chase states that no one had been living at the

property since January 2010, Plaintiff was behind on his mortgage

payments, and an inspector found shutoff notices from the electric

company at the property.  *Id. at 37-38.*

Paatalo denies that the property had been abandoned.  *Court Doc.*

*200 at 25-26.*  In an affidavit, he states that although the electricity

was off, the propane gas tank "was sufficiently full to keep the gas heat

functioning in the house" and that his neighbor had agreed to keep an eye on the property while he was away. *Court Doc. 201 at 5.* He states that the property was safely secured "with all my worldly possessions inside." *Id.* Paatalo also relies on paragraph 7 of the Deed of Trust which requires a Lender to give a borrower notice prior to making an interior inspection. Paatalo states that he was not given any notice that Chase or its agents intended to enter the property.

In its reply, Chase contends that paragraph 9 of the Deed of Trust applies, rather than paragraph 7 as Paatalo contends. Paragraph 9 provides in pertinent part:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument ... or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including ... securing and/or repairing the Property. .... Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks .... and have utilities turned on or off.

*Court Doc. 188-6 at 8.* This section does not require notice to the Borrower. There is no dispute that, as of March 2010, Paatalo had failed to perform his agreement to make the periodic payments

required by the Note and Deed of Trust.  Because he was in default,
paragraph 9 of the Deed of Trust, quoted above, gave Chase the right to
access the property.

Because it had a right to enter the property, it cannot be held
liable for trespass under the facts alleged.  Accordingly, summary
judgment must issue on Count XIII.

### (12) Count XIV: Theft

By its terms, Count XIV is stated only against Defendant LPS
Field Services Inc.  Chase argues that it is entitled to summary
judgment because Count XIV is not directed to Chase, because Paatalo
has settled with LPS, and because Paatalo has produced no evidence
that Chase authorized or ratified a theft of his items.  *Court Doc. 187 at
43-44.*   Chase points out that, at his deposition, Paatalo was unable to
support his assertion that Chase was responsible for the theft.  *See
Court Doc. 188-1 at 86-87.*  Paatalo does not respond to these
arguments.  Summary judgment is appropriate.

### C.   BANA'S MOTION FOR SUMMARY JUDGMENT

BANA filed a joinder in Chase's motion for summary judgment.

*Court Doc. 193.*  Paatalo did not respond to BANA's joinder.  The Court

previously dismissed all counts against BANA except Counts I

(RESPA), IV (unjust enrichment), VIII (quiet title), IX (MUTPA), XI

(FDCPA), XII (slander of title), and XIII (trespass).

With respect to Count I, BANA argues that a Qualified Written

Request must be sent to the servicer of a loan, citing HUD's Reg. X §

3500.21(e) and *Castaneda v. Saxon Mortg. Services, Inc.,* 687 F.Supp.2d

1191, 1199 (E.D. Cal. 2009).  In *Casteneda*, the court held that the

plaintiff's claims must be dismissed because they had not alleged that

the defendant was a "loan servicer" under RESPA.  Paatalo does not

respond to this argument.  Summary judgment for BANA on Count I

must be granted.

With respect to Counts IV, VIII, IX, and XII, again Paatalo fails to

address BANA's summary judgment joinder.  For the same reasons

that summary judgment must issue for Chase, the Court will grant

summary judgment to BANA.

With respect to Count XI, BANA makes the additional argument

that Paatalo cannot show that BANA is a debt collector, because a

lender or a trustee is not a "debt collector" as defined by 15 U.S.C. §

1692a(6).  *Court Doc. 193 at 3.*  Paatalo does not respond to this

argument.  Summary judgment will be granted to BANA on Count XI.

Finally, on Count XIII, the Court notes that Paatalo has not

alleged that BANA was involved in the alleged trespassing.  Their

liability instead is predicated on their interest in the Deed of Trust.

*See Court Doc. 34 at 40-41.*  Because the Court has concluded that

Paatalo was in violation of his agreements in the Deed of Trust, and

that the Lender and its agents therefore had a right to enter the

property, summary judgment to BANA will issue on Count XIII.

### D.   PAATALO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Paatalo's moves for partial summary judgment on Count VIII, his

quiet title claim.  His arguments are difficult to follow.  First, he

apparently contends that actions by Mackoff Kellogg should be binding

on the remaining Defendants, Chase and BANA.  *Court Doc. 137 at 4-7.*

This argument fails because there is no basis set forth by which the

acts of Mackoff Kellogg bind Chase or BANA, in the absence of actual

or ostensible authority.  *See Bellanger v. American Music Co.*, 104 P.3d 1075, 1079 (Mont. 2004).

Paatalo also argues that the 207-OA3 Trust has no equitable claim to title to the property once the trustee (Mackoff Kellogg) has settled.  But this argument apparently is based on Paatalo's mistaken identification of Mackoff Kellogg as trustee for the 207-OA3 Trust as opposed to Paatalo's Deed of Trust.  The settlement with Mackoff Kellogg does not entitle Paatalo to a judgment quieting title in his favor.  His motion must be denied, and summary judgment granted to Chase, as set forth above.

## E.    PAATALO'S MOTION TO RE-OPEN DISCOVERY

Paatalo moves to re-open discovery to obtain additional information regarding the September 25, 2008 Purchase and Assumption Agreement ("PAA") between Chase and the FDIC.  The motion violates the Local Rules in various respects, most significantly because it was filed after the motions deadline and comes too late.  In any event, given the rulings stated above, this motion is moot.  The Court's rulings, stated above, do not rely upon the PAA.  Plaintiff has

not shown that anything in the "unabridged" PAA would change the controlling law and facts set forth above.

## III.   <u>CONCLUSION</u>

For the reasons set forth above,  IT IS HEREBY ORDERED that Chase's Motion for Summary Judgment (*Court Doc. 186*) is GRANTED, and Plaintiff's Motion for Partial Summary Judgment (*Court Doc. 137*) and his Motion to Re-Open Discovery (*Court Doc. 212)* are DENIED.

IT IS FURTHER ORDERED that Bank of America's Joinder in the Motion for Summary Judgment is GRANTED.

The Clerk of Court is directed to enter Judgment accordingly and to close this file.

DATED this 28th day of June, 2012.

<u>**/s/ Carolyn S. Ostby**</u>
United States Magistrate Judge